In the Matter of THE SECURITY LIFE INSURANCE AND ANNUITY COMPANY.

*Insolvent life insurance company — distribution of assets of — Participation in profits — policyholders, not made members of the company by.*

The petitioner, for whose benefit a policy of $6,000 had been issued upon the life of her husband, presented to the company, on the seventh of December, notice and proof of his death. The company, which was a stock company, was at that time insolvent, and on the fourteenth of December a receiver thereof was appointed. Petitioner applied to have her claim paid out of the assets in full. *Held,* that her claim was not entitled to priority over the claims of the policyholders for a return of a proportionate amount of their premiums as provided

by section 86 of 3 Revised Statutes (5th ed.), 771, notwithstanding the fact that the policyholders were entitled to participate in the earnings of the company, such participation not having the effect of rendering them members of the company so as to make them liable for its losses.

Appeal by Rebecca L. Miller, petitioner, from an order denying an application for the payment of a loss arising upon a policy of life insurance.

The petition of Rebecca L. Miller stated, among other things, that she was insured in the said Security Life Insurance and Annuity Company in the sum of $6,000 upon the life of her late husband, James L. Miller.

That the said James L. Miller died in the city of New York on the 26th day of November, 1876.

That on the 7th day of December, 1876, the petitioner presented to the said The Security Life Insurance and Annuity Company due notice and satisfactory evidence of the death of the said James L. Miller and complied with the requirements of said policy in respect thereto, and that said company duly accepted and received such notice and evidence on the day last aforesaid.

That the said The Security Life Insurance and Annuity Company became insolvent on the 14th day of December, 1876, and that on the said day, in the above entitled proceedings, William H. Wickham was duly appointed the receiver of said company.

That the assets of the said The Security Life Insurance and Annuity Company are wholly insufficient to meet its liabilities for matured claims and to provide for the reinsurance of its subsisting policies or return the surrender value thereof. That such deficiency exceeds $2,000,000, but that the amount of such assets exceeds the amount of its matured claims of all classes, which do not amount in the aggregate to more than $300,000 or $350,000, exclusive of the claims of the holders of subsisting policies.

That the whole amount of the claims due or becoming due for losses by death prior to the said 14th day of December, 1876, is $223,239.15, and that the cash assets (independent of the real estate, bonds and mortgages, premium notes and loans) which have come into the hands of the said receiver, and are now in his possession, are more than sufficient to pay said death claims in full.

That the said receiver has refused, and still does refuse, to recog-

nize the preference or priority of payment in full of the said death claims over the claims of other creditors and over the claims of policyholders of subsisting policies of said company.

The charter of the company contained the following provisions:

SECTION 19. The company, within sixty days next after the expiration of three years from the 1st day of December, 1861, and within the first sixty days next after the expiration of every subsequent period of three years, shall cause a general statement to be made and a balance to be struck of the affairs of the company, which shall exhibit the amount of surplus or net profits of the company for such periods, respectively, as near as the same can be ascertained after deducting losses and expenses and a sufficient amount to reinsure all outstanding policies and to meet the engagements of the company in annuities and otherwise.

Immediately after the striking of each of the aforesaid balances the net profits or surplus for the next preceding period of three years, ascertained as above provided, shall be apportioned, divided and accredited as follows, viz.:

Twenty per cent thereof to the account of the stockholders of the company, payable *pro rata*, in scrip, at such times as the board of directors shall provide, and the remaining eighty per cent thereof to the policyholders and annuitants who participate in the profits.

Such scrip shall draw interest from its date, payable annually at the rate of six per cent per annum. The annuitants' proportion shall be divided equally, by way of addition to their annuities, among the holders of annuities issued by the company, according to the amounts of the same, and the ages of the parties to be made out by the actuary of the company, which annuities shall have been in existence for one year previous, and which shall be unexpired.

*Wm. D. Booth* and *Robert Sewell*, for the appellant.

*Hamilton Cole*, for the receiver, respondent.

*William Barnes*, for other policyholders.

DANIELS, J.:

The Security Life Insurance and Annuity Company was incorporated as a stock company for the transaction of the business of life insurance and dealing in annuities, under the Laws of 1853. (2 R. S.

[5th ed.], 767.)  It commenced its business in the year 1861, and issued a life insurance policy to the petitioner, Rebecca L. Miller, for the sum of $6,000, on the life of her husband, James L. Miller.  He died on the 26th day of November, 1876, while the policy was in full force.  On the 7th of December, 1876, she presented to the company notice and proof of his death, as that was required to be done by the terms of the policy.  The company was at that time insolvent, and on the fourteenth of that month the Hon. William H. Wickham was appointed its receiver.  The petitioner applied to the court for an order directing the payment of the amount of the loss out of the assets of the company in his hands.  It was shown that they amounted to about the sum of $250,000, and that the net value of different classes of policies in force, unpaid endowment claims, and certain small items, amounted to the aggregate sum of $3,842,600.  For the reason that these different claims were considered to be entitled to participate in the distribution of the assets, the application made for the payment out of them of this particular loss was denied.  That has been objected to as erroneous, chiefly for the reason that the holders of policies were entitled to participate in, and be benefited by, the earnings of the company.  But that did not have the effect of rendering them members of the company in any such sense as to subject them to direct or indirect liability for its losses.  Its only result was to diminish the premiums actually payable upon their policies, and to graduate their amount according to the prosperity and pecuniary success of the company.  The persons holding them were still entitled to the full benefit of their policies according to their terms, and had the unqualified right to resort to the company for their indemnity.  The plan was adopted for the purpose of returning what should be received, by way of premiums, beyond what could be required to pay the expenses and meet the obligations of the corporation, and in no event did it amount to any thing but a mere abatement, by way of returning the excess of payments, secured by the collection of the premiums.

The act under which the company was incorporated provided that it should be subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same were applicable, except that requiring annual statements and other matters specially provided for.  (2 R. S. [5th ed.], 770, § 73.)  And by one of the provisions so

applied to it, open and subsisting engagements or contracts, in the nature of insurances or contingent undertakings of any kind, are to be regarded as obligations existing against the corporation, and with the consent of the parties holding them, they can be canceled and discharged by the receiver refunding so much of the premium paid as shall be in the same proportion to the time which shall remain of the risk assumed as the whole premium will bear to the whole term of the risk. (3 R. S. [5th ed.], 771, § 86.) To that extent the other policyholders, under this provision, became creditors of the corporation, at the time when the receiver was appointed; and it defined the principle adopted for the adjustment of their demands, and the cancellation of their contracts of insurance. And under it they can legally make their respective claims to the receiver for payment. The only source from which payment can be made by him, is that of the assets of the insolvent corporation, and persons whose claims for losses had matured when he was appointed, have not, in terms, been given any priority over the other class of demands.

The appointment of the receiver was made under the provisions of the statute prescribing the proceedings which should be taken in equity for the settlement of the affairs of insolvent corporations. (3 R. S. [5th ed.], 761.) They were rendered applicable to this corporation by the section of the act already referred to under which it was created, and by one of them it was declared that "a just and fair distribution of the property of such corporation and of the proceeds thereof" should be "made among its fair and honest creditors, in the order and in the proportions prescribed by this title in the case of a voluntary dissolution of a corporation." (Id., 766, § 57.) And that by the provisions referred to, after giving a preference to debts entitled to it which should be owing to the United States, and judgments, so far as they might be liens, on the corporate property, declared that all other creditors should be paid "in proportion to their respective demands, without giving any preference to debts due on specialties." (Id., 771, § 90, sub. 3.) This very clearly placed all demands against the corporation on the foundation of equality, except such as were entitled to be preferred in payment under the laws of the United States, or were liens by virtue of judgments recovered upon the property of the corporation, and it was so construed and applied in the cases of *Lowene* v. *American Fire Ins. Co.* (6 Paige,

482) and *De Peyster* v. *Same* (id., 486). The policy of the statute, as it was the prevailing principle in equity, was to apply the doctrine of equality, as far as that could be practically done, to the adjustment of all the obligations of the insolvent corporation, and it accordingly, in terms, was made expressive of that intention. For that reason, the claim held by the applicant was not entitled to be paid out of the assets in the receiver's hands, in preference to those of the policy-holders for their proportionate return of premiums. The utmost that can be secured for it, will be to place it, as the statute seems to have required, on the same footing of equitable equality. That and all other *bona fide* claims, not entitled to preference because of the exceptions declared, will participate proportionately in the proceeds of the assets held by the receiver. Beyond that it cannot be extended, and for that reason the application made was properly denied. The order appealed from should be affirmed, with ten dollars costs, besides disbursements.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs, besides disbursements.